Mandy Lee BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00126–CR.

Court of Appeals of Texas, San Antonio.

May 20, 1998.

Mark Stevens, San Antonio, Jeffrey J. Pokorak, Director and Associate Professor, Michael Blinn, M. Shane Thompson, Student Atty., St. Mary's Center for Legal & Social Justice, San Antonio, for Appellant.

Anton Hackebeil, Dist. Atty., Uvalde, Jim Vollers, Austin, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION ON APPELLEE'S MOTION FOR REHEARING

STONE, Justice.

Appellee's Motion for Rehearing is denied. The opinion of this court issued on January 28, 1998 is withdrawn and this opinion is substituted therefor.

This appeal arises from a conviction of murder. Mandy Lee Brown (Brown) plead not guilty to the State's charge of murder in the first degree. After assessing guilt, the jury sentenced Brown to twenty years incarceration in the Institutional Division of the Texas Department of Criminal Justice. In four points of error, Brown raises three issues: (1) whether she was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and Article I, section ten of the Texas Constitution; (2) whether the trial court erred by misdirecting the jury on the law regarding reasonable doubt and the burden of proof; and (3) whether the court erred by not properly instructing the jury on the law of self-defense.

We find Brown was denied effective assistance of counsel. Accordingly, we reverse the judgment of the trial court and remand the cause for a new trial.

## FACTUAL BACKGROUND

On the night of October 21, 1995, the Atascosa County Sheriff's Department received a 911 call from Richard Collins. Collins reported Brown had shot her husband, Ernesto Olivarez, and arrived at Collins' house bleeding. At Brown's residence, Atascosa Sheriff Deputies found the victim laying on his bed with a revolver near his left side and a small knife in his right hand.

During the ensuing investigation, deputies collected evidence at the scene, searched Collins' house, and confiscated the car Brown drove after the shooting. In the car, deputies found a mirror containing traces of cocaine and a razor blade wrapper. It was later determined Brown's blood was on the razor blade wrapper.

At trial, Brown alleged she shot her husband in self defense. Brown introduced extensive evidence that she was an abused spouse, and on the night in question, she shot at her husband only after he attacked her with a knife. Brown testified that even though she feared for her life, she did not intend to kill her husband, and she only fired the weapon in an attempt to keep him from hurting her.

On appeal, the State contends it tried the case on the theory that the killing was drug related. This contention is belied by the record. The record reveals the State argued that Brown's actions were calculated, and not done in self-defense. To that end, the State introduced physical and medical evidence indicating that the parties were not involved in a struggle immediately preceding the victim's death, that the victim was in a sitting position when the fatal shot was fired, and that Brown's wounds were superficial and perhaps even self-inflicted.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In the first two points of error, Brown alleges numerous errors by trial counsel amounted to a denial of her right to effective assistance of counsel. Specifically, Brown contends trial counsel:

(1) Elicited, opened the door, and failed to object to numerous acts of extraneous misconduct which were highly prejudicial and would not have been admissible but for counsel's ineffectiveness;

(2) Incorrectly lessened the State's burden of proof during argument;

(3) Failed to object to an improper statement regarding Brown's post-arrest silence;

(4) Failed to ensure proper jury instructions;

(5) Failed to object to the State's opening argument;

(6) Continued to serve as counsel while a conflict of interest existed;

(7) Failed to voir dire the State's expert witnesses outside the presence of the jury; and

(8) Failed to preserve jury selection error.

To prove ineffective assistance of counsel, a convicted defendant must show (1) trial counsel's performance was deficient, in that counsel made such serious errors he or she was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim. App.1986) (adopting *Strickland* standard for resolving allegations of ineffective assistance of counsel under both federal and state constitutions). The constitutional right to effective assistance does not entitle a defendant to errorless counsel. *Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App.1987). In this connection, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Banks v. State,* 819 S.W.2d 676, 681 (Tex.App.—San Antonio 1991, pet. ref'd).

We judge whether Brown meets the *Strickland* standard by reviewing the "totality of the representation" rather than isolated acts or omissions. *See Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Banks,* 819 S.W.2d at 681. Brown must overcome the presumption that under the circumstances, trial counsel's

actions might be considered sound trial strategy. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Moreover, we apply the test at the time of trial without the benefit of hindsight. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Jackson,* 877 S.W.2d at 771. We sustain allegations of ineffective assistance only if firmly founded in the record which affirmatively demonstrates the alleged ineffectiveness. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). Even under this stringent burden, "ineffectiveness of counsel is not a specter" and it does exist when the effect of trial counsel's errors undermines the concept of a fair trial. *Green v. State,* 899 S.W.2d 245, 247–48 (Tex.App.—San Antonio 1995, no pet.).

### 1. Conflict of Interest

■ In addressing Brown's claims of ineffective assistance of counsel, we find three of the alleged errors are without merit. First, is the alleged conflict of interest that arose out of co-counsel acting as a surety on Brown's bond. After the jury's finding of guilt, but before the punishment phase, the prosecutor asked that Brown's bond be revoked. One of Brown's trial attorneys argued against revocation; however, co-counsel stated to the court that she was concerned Brown might flee, even though she admittedly had "nothing to base that on . . . ." The court revoked Brown's bond. Brown argues this conflict of interest raises a presumption of error and the less strict standard recited in *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), applies rather than *Strickland.* However, this court recently visited the distinctions between *Cuyler* and *Strickland.* We held *Cuyler* applies when counsel attempts to represent co-defendants, but *Strickland* applies when the attorney has a self-interest in some aspect of the case. *Monreal v. State,* 923 S.W.2d 61, 65 (Tex.App.—San Antonio 1996), *aff'd,* 947 S.W.2d 559 (Tex.Crim.App.1997). We further held that "no presumption of prejudice arises out of the self-interest conflict—to establish ineffective assistance of counsel, the client must prove prejudice." *Id.* Here, the allegation of conflict did not arise until after the guilt/innocence phase, and Brown fails to illustrate how the alleged conflict prejudiced her trial.

### 2. Rule 705(b) Error

■ Second, is Brown's contention that trial counsel was ineffective by failing to voir dire the State's expert witnesses pursuant to Rule 705(b) of the Texas Rules of Criminal Evidence. Rule 705(b) allows for counsel to voir dire expert witnesses outside the presence of the jury. Through this rule counsel has an opportunity outside of formal discovery to grasp what facts the expert is basing her opinion on. However, neither the rule nor the case law creates a presumption of error if counsel fails to request voir dire. We agree with the State that nothing illustrates counsel did not know the basis of the experts' opinions. If defense counsel knew the basis of the opinion testimony then it follows that there was no need to invoke this rule of evidence.

### 3. Failure to Obtain Record

■ Third, Brown argues ineffective assistance of counsel because of trial counsel's failure to establish a record during jury selection. Trial counsel conducted proceedings at the bench and off the record, thereby failing to create a record for Brown to base her allegation or for this court to review. Brown contends the failure to create a record amounts to ineffective assistance because counsel effectively prevented Brown from raising specific allegations on appeal. However, in addition to no evidence regarding jury selection, Brown failed to file any evidence supporting her contention with the motion for new trial. As our standard of review dictates, any allegation of error must be firmly based in the record. To find trial counsel was ineffective, without evidence firmly founded in the record, would call for speculation which we shall not do. *See Jackson,* 877 S.W.2d at 771 (holding appellate court may not conclude based on speculation that counsel was ineffective when record is silent about why he made the decisions he did at trial); *Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992) (reversing court of

appeals decision based on speculation that trial counsel had no justification for trial decision not to strike a juror).

Although we find the three issues addressed above do not amount to ineffective assistance of counsel, this does not dispose of the appeal. Therefore, we also address Brown's additional allegations of error.

### 4. Extraneous Offenses

■■■ Brown argues that trial counsel made fatal errors in opening the door, eliciting, and failing to object to extraneous evidence of drug use and promiscuity. Extraneous offenses are inherently prejudicial and when counsel fails to object to numerous extraneous and prejudicial matters, counsel is ineffective. *See Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App.1983); *Cude v. State,* 588 S.W.2d 895 (Tex.Crim.App. 1979); *Wenzy v. State,* 855 S.W.2d 52, 58 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). Generally, drug evidence has no relevance in a non-drug prosecution, *see Couret v. State,* 792 S.W.2d 106, 108 (Tex.Crim.App. 1990), and counsel may be ineffective for eliciting such evidence. *See Hutchinson v. State,* 663 S.W.2d 610, 613–15 (Tex.App.— Houston [1st Dist.] 1983, pet. ref'd). Drug evidence in the instant case was irrelevant. On appeal, the State argues the drug evidence was relevant to prove the State's theory that Brown killed her husband for drugs.[1] However, as noted, this argument stands in stark contrast to the record. The State never argued that Brown killed her husband for drugs; rather, the State merely argued that Brown did not shoot her husband in self-defense.

The first mention of drugs was presented during the presentation of the State's case-in-chief. As noted, traces of cocaine were found in the car in which Brown left the accident scene. Although cocaine was mentioned, it was never tied to the State's theory of the case. The most damaging evidence was introduced through defense counsel during Brown's direct examination when he inquired into her drug history. Although

Brown testified that she never had a drug problem and had not used cocaine in a number of years, she did testify that she experimented with cocaine in the past. At this point the State's work was done for them. Defense counsel elicited the evidence of cocaine found in Brown's car, and connected the drugs to Brown by her past use of cocaine. This also allowed the State to offer rebuttal testimony to contradict Brown's testimony of no prior drug addictions.

The State capitalized on the opportunity afforded them by defense counsel. In an effort to further discredit Brown's defense, the State offered evidence that she used cocaine on a regular basis, drank to excess, and was promiscuous. To this end, the State called a number of witnesses regarding Brown's reputation. Most damaging was the testimony of Richard Lewis. Lewis testified Brown was a heavy drug user who would do anything for drugs. In addition, Lewis responded in the affirmative when asked whether Brown was a drug addict with a propensity for violence. Although defense counsel objected to the calling of Lewis, at that point the proverbial snowball had gained terminal velocity. Defense counsel had established the State's basis for Lewis's testimony. A combing of the record reveals the most damaging and prejudicial evidence concerned extraneous bad acts which were admitted only because of defense counsel's conduct.

We find no reasonable explanation for why defense counsel would open the door to this damaging extraneous evidence and aid in linking the evidence to the defendant. We recognize the obtuse trial technique of offering damaging evidence to the jury in an attempt to be forthcoming and honest. However, "regardless of what his trial strategy was, appellant's counsel failed to protect appellant from the adverse effects of the introduction of extraneous offenses and destroyed all hopes of an acquittal or of appellant's being granted probation." *Hutchinson,* 663 S.W.2d at 614. As in *Hutchinson,* we do not find any connection between defense coun-

---

1. This interpretation of the record is adopted by the dissent and provides the basis for the dissent's conclusion that because the evidence was

admissible, defense counsel was not ineffective but was relying upon an unsuccessful trial strategy.

sel's elicitation of drug evidence and trial strategy. *Id.*

In addition to eliciting and failing to object to extraneous offenses, defense counsel accepted an improper burden of proof, failed to object to implications concerning Brown's right to remain silent, and failed to object to incomplete jury instructions. We need not determine whether each instance standing alone would require reversal. However, we do agree that these errors further illustrate defense counsel's ineffective preparation for, and presentation at, trial.

### 5. Burden of Proof

In addition to failing to object to extraneous offenses, defense counsel provided the jury with erroneous information regarding the burden of proof. First, defense counsel told the potential jurors during jury selection that Brown had the burden of proving self-defense by a preponderance of the evidence. Second, counsel failed to object when the prosecutor stated during oral argument that to raise the issue of self-defense Brown would have to testify. We note there is no evidence that the prosecutor's remarks forced Brown to testify. Rather, the record shows Brown testified pursuant to trial strategy. Nonetheless, the State placed an improper impression in the minds of the jurors which counsel failed to recognize or cure.

The State contends any prejudice caused by counsel's remarks was cured by the trial court's instructions. The State directs us to *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App. 1987), which held that in the absence of evidence to the contrary, it is presumed that the jury followed the court's instructions. We recognize the possibility that these allegations without more would not constitute ineffective assistance of counsel because the trial court cured any error in this regard by correctly instructing the jury on the proper burden of proof. However, we find that these errors illustrate defense counsel's lack of preparation for a case of this nature.

### 6. Post Arrest Silence

We also find defense counsel's failure to object to questions regarding Brown's post-arrest silence illustrates the ineffectiveness

of counsel's assistance. An investigating officer testified that after Brown received her *Miranda* warnings, she "refused to give me any information or even sign the waiver." Defense counsel failed to object. Rather, on cross-examination counsel questioned the officer on the meaning of the *Miranda* warnings, seemingly in an effort to illustrate that Brown had no obligation to speak to the police. It is hornbook law that no guilt may be inferred from a citizen's enforcement of the protections afforded her by the *Miranda* warnings. *See Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Sanchez v. State,* 707 S.W.2d 575, 579 (Tex. Crim.App.1986). Defense counsel's cross-examination reveals his awareness of this protection, but it is clear that counsel was not prepared to respond to the State's questioning with an objection.

### 7. Jury Charge

Lastly, Brown contends trial counsel was ineffective by failing to object to the jury charge. Brown relies on case law holding that counsel's failure to request instructions amounts to reversible error, but that is not the case here. The jury was instructed, but the instructions were incomplete. Brown argues the failure to object to an incomplete instruction amounts to reversible error. Without determining whether this allegation standing alone amounts to ineffective assistance of counsel, we note that defense counsel's failure to ensure the charge included complete instructions reflects on counsel's preparation and knowledge of the appropriate instructions in a case of this nature. Therefore, we find that this allegation lends further support to Brown's claim based on ineffective assistance of counsel.

### CONCLUSION

■ Not every allegation of ineffectiveness of counsel in this case would justify reversal. However, the totality of defense counsel's representation undermines this court's confidence in the conviction. This court has held counsel ineffective when trial counsel failed to (1) properly voir dire jurors, (2) elicited extraneous offenses, (3) made no effort to object to inadmissible evidence, (4)

admitted his lack of preparation, and (5) misstated the burden of proof. *Montez v. State,* 824 S.W.2d 308, 310 (Tex.App.—San Antonio 1992, no pet.). In *Montez,* we held the appellant did not receive a fair trial, and the totality of trial counsel's assistance undermined the Court's confidence in the outcome of the trial. *Id.* at 311. Many of the same factors exist in the present case. Specifically, trial counsel must be aware of the impact of extraneous offenses, and their admission should not be taken lightly. Even under the strict standard of *Strickland,* we find that defense counsel's ineffectiveness led to the introduction of damaging extraneous evidence such that our confidence in the result of the trial is undermined to the extent that we cannot state with reasonable certainty whether the defendant was found guilty of the crime charged or for the extraneous bad acts offered by the State.

We sustain Brown's first and second points of error. We need not address Brown's additional points of error because our disposition of these points alone requires reversal. Accordingly, we reverse the judgment of the trial court and remand the cause for a new trial.

Dissenting opinion by GREEN, J.

GREEN, Justice, dissenting.

I respectfully dissent. Mandy Lee Brown shot and killed her husband, claiming it was self defense. The State claims it was a drug-related murder. The majority reverses and remands for a new trial largely on the basis that Brown's trial counsel improperly raised her history of drug use before the jury and, as a consequence, rendered her ineffective assistance of counsel. I do not believe, however, that the errors complained of overcome the strong presumption of effective representation. Moreover, Brown has not shown there is a reasonable probability that, but for the errors of her trial counsel, the result of the trial would have been different.

In this "wife shoots husband" murder case, the State needed to provide a motive for the murder in the face of Brown's self-defense claim. The State argued that Brown shot her husband in an argument over drugs.

Consequently, proof of Brown's history of drug addiction was admissible to show motive, *see* Tex.R.Crim. Evid. 404(b), contrary to the majority's suggestion that such evidence would not be relevant in a murder case. *See* op. at 293. If it was apparent to Brown that the drug evidence was going to come in, it was not unreasonable for her to deal with her undeniable past drug use and try to minimize its impact. Indeed, the extraneous offense evidence cited by the majority as proof of the ineffectiveness of Brown's counsel may be viewed as part of his strategy to deal with the State's motive theory. For example, Brown's testimony that drug use was part of her past is consistent with a theory that she could not have killed her husband over drugs because she was no longer a drug user. She also argued, with respect to her self-defense theory, that the cocaine found in her husband's car was his and that his drug addiction was a cause of his abusive behavior toward her.

Whether or not Brown elicited evidence of her own drug history, the State was entitled to prove that she was, at the time of the murder, a hopeless drug addict who was willing to kill her husband for the drugs he hid on his body. That Brown's testimony could perhaps also be seen as "opening the door" to the State's proof does not make her counsel's strategy of dealing with the fact of her drug use legally ineffective, however factually ineffective it may have turned out.

The record contains much evidence that is consistent with the State's theory of the case. Defense counsel, playing with the cards that were dealt him, was duty bound to lay out what he thought was his best hand. From our distant, post-verdict perspective, we may not agree that he played his best cards. But we are not entitled to second guess. There is no perfect, or best, way to try a case. There are too many subjective factors involved in formulating what a lawyer considers, in his professional judgment, to be the best trial strategy. The strong presumption of effective representation exists in the law to take this into account. Brown has not overcome the presumption of effective representation because there is a plausible defen-

sive theory that justifies the strategy employed by her trial counsel.

In order to obtain a reversal because of ineffective assistance of counsel, a defendant is required to prove harm. The test for determining whether ineffective assistance of counsel resulted in harm was set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> ... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex. Crim.App.1986). In view of the entire record in the case, there is nothing to suggest that the result of the trial would have been different had the claimed errors of counsel not occurred. As indicated, it is likely the evidence of Brown's drug use would have come in as evidence in support of the State's motive theory. It did not matter that the evidence first came in as elicited by Brown's own attorney.

A convicted murderer should not be able to get a new trial simply because her trial strategy was unsuccessful. In my view, that is what has happened in this case. Therefore, I respectfully dissent.