Robert **RYLANDER**, Appellant,

v.

The **STATE of Texas**, Appellee.

Nos. 04–01–00099–CR to 04–01–00101–CR.

Court of Appeals of Texas, San Antonio.

March 6, 2002.

Anthony Martin Smith, Law Offices of Anthony Martin Smith, San Antonio, for appellant.

Mary Beth Welsh, Assistant Criminal District Attorney, San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, and PAUL W. GREEN, Justice.

Opinion by: ALMA L. LÓPEZ, Justice.

A jury found appellant, Robert Rylander (hereinafter "Rylander"), guilty on three separate felony offenses for aggravated assault, including aggravated assault against a public servant. Rylander was subsequently sentenced to a term of twenty years and two terms of eleven years, with the terms to run concurrently.[1] In one issue, Rylander contends that he was denied his constitutional right to effective

---

1. The Honorable Pat Priest presided over the punishment phase.

assistance of counsel based on various acts and omissions by trial counsel below. For the reasons stated below, we sustain Rylander's sole issue on appeal.

## Background

This cases arises as a result of an occurrence on May 29, 1999, in the parking lot of a San Antonio country and western bar where a Terrell Hills police officer and two bar patrons were struck by a Ford truck driven by Rylander. At the trial, Rylander testified that on that day he and a co-worker, Michael Holland, arrived in San Antonio returning from a work assignment in Oklahoma. The two men arrived at Midnight Rodeo shortly before midnight and spent the night drinking with friends until they left the bar at closing time. Rylander testified that he exited the bar with another friend and recalled "shooting" off his mouth as he crossed the parking lot. He testified that his statements were not directed to anyone in particular. Shortly thereafter, Rylander was punched in the face and fell to the ground. Rylander sustained a nose bleed as a result of the punch. Additionally, he suffered from headaches, dizziness and memory loss for two weeks after the incident.

Rylander testified that he did not recall getting into the truck and hitting the complainants. He also did not recall being arrested and having his statement taken by police. He testified that he was a diabetic and that on the morning after the incident was informed that his blood sugar level was extremely high. As a youth, Rylander suffered severe head trauma as a result of a motorcycle accident that resulted in him being in a coma. As an adult, on one previous occasion, Rylander suffered a black-out after being struck on the head. He testified he could not remember his reaction to being hit, but was informed that he had reacted violently. According to Rylander, his moments of memory loss were precipitated by high blood sugar levels and trauma to the head.

The State's evidence at trial included a signed statement by Rylander. In that statement, Rylander recalled getting punched in the face. He also recalled getting into his truck and slamming into a car. The State also offered the testimony of nine witnesses, including the complainants. Many of the witnesses saw Rylander's truck hit two vehicles injuring two bar patrons and also hit a police officer working security. Many of these witnesses also identified Rylander as the driver.

After the trial and sentencing, Rylander filed a pro se motion for new trial in which he alleged ineffective assistance of counsel. In that motion, Rylander alleged that trial counsel was ineffective for failing to submit medical evidence in support of his defense. Rylander's trial counsel also filed a motion for new trial alleging different grounds than those previously raised by Rylander. Both motions were overruled by operation of law.

## Standard of Review

In order to prevail on an ineffective assistance of counsel point of error, Rylander must demonstrate by a preponderance of the evidence that: (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness; and (2) he was prejudiced, i.e., a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). The constitutional right to effective assistance does not mean errorless counsel. *See Brown v. State*, 974 S.W.2d 289, 292 (Tex.App.-San

Antonio 1998, pet. ref'd). Rylander must overcome the presumption that trial counsel rendered adequate assistance, and it is incumbent on him to identify those acts or omissions which do not amount to reasonable professional judgment. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052

An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson,* 9 S.W.3d at 813; *Brown,* 974 S.W.2d at 293. The *Strickland* test is applied without the benefit of hindsight. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996). We understand that "an appellate court should be especially hesitant to declare counsel ineffective based on a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions." *Id.* at 813. Nevertheless, even under this stringent burden, ineffectiveness of counsel does exist when the effect of trial counsel's errors undermines the concept of a fair trial. *See Brown,* 974 S.W.2d at 292.

### Ineffective Assistance of Counsel

Rylander asserts various matters to support his claim of ineffective assistance of counsel during the guilt/innocence phase. Rylander first contends that trial counsel failed to present qualified expert medical testimony to establish the defense of automatism. Rylander maintains that trial counsel attempted to argue that because of Rylander's physical tendency to black-out as a result of head trauma and/or high blood sugar levels, any acts in which he engaged on the night of May 29, 1999, were not voluntary.[2] Based upon a review

of the record, we agree that this was the defense which trial counsel attempted to present.

The State's evidence included witnesses who watched Rylander's truck hit vehicles which in turn injured two of the complainants. These witnesses also saw Rylander's truck hit the security guard who had attempted to stop the truck. Many of these witnesses identified Rylander as the driver of the truck. Rylander did not deny that he had control over the keys to his truck on the evening in question. Under these circumstances, Rylander's *only* defense was to challenge the voluntariness of his actions and/or his culpability. However, trial counsel failed to present qualified medical testimony in support of that defense. Rather, trial counsel attempted to submit such testimony through non-medical witnesses such as two paramedics, one of which had not treated Rylander, and Rylander. Pursuant to the State's objections, the trial court would not allow such testimony to be obtained from these witnesses.

On more than one occasion, the trial court advised trial counsel of the necessity to provide a medical expert. For example, while attempting to obtain testimony regarding Rylander's understanding of his medical condition, trial counsel had the following exchange with the trial court:

> THE COURT: Where are you—all going?
>
> [COUNSEL]: This man was suffering from a concussion and blackout spell precipitated by a blow to the forehead which was sufficient to break his nose.
>
> THE COURT: But your doctor is not in front of the jury.

---

2. Rylander correctly asserts that there are requirements for voluntariness and culpability in order for a defendant to be found guilty of a crime. *See* TEX. PEN.CODE ANN. §§ 6.01 & 6.02 (Vernon 1994).

[COUNSEL]: Yes, but it relates to his understanding of his medical condition . . .

THE COURT: He's not a doctor.

\* \* \*

THE COURT: Is the doctor available?

[COUNSEL]:—until I told him—

THE COURT: Answer the question, Is the doctor available?

[COUNSEL]: He may be.

A similar exchange occurred when trial counsel attempted to obtain favorable testimony from one of the paramedics who had treated Rylander.

[COUNSEL]: Let me ask you one final question, Chief Steele. If, in fact, you had been the paramedic that responded the next day to this individual who gave you these symptoms, the headaches, the blurred vision, you detected the old bleeding from the nose . . . what would you have reported in this report?

\* \* \*

[THE STATE]: Well, I don't think he's the witness to testify to that.

THE COURT: If he [Rylander] went and saw a doctor—

[COUNSEL]: Yes, sir.

THE COURT:—let the doctor tell them.

[COUNSEL]: I think this witness is qualified to render the diagnosis he would record on his regular—

THE COURT: The person qualified is a doctor.

Subsequently, when questioned again by the trial court regarding whether Rylander's personal doctor would be testifying, trial counsel informed the court that he had attempted to serve a subpoena on the doctor. However, the record reflects that no subpoenas were issued for Rylander's personal physician. Simply, the record reflects that trial counsel made no attempt to call upon a medical doctor to testify concerning the relationship between Rylander's head trauma and his acts on May 29, 1999.

We are cognizant of those cases which have refused to hold ineffective assistance of counsel for failing to provide medical evidence or expert testimony. *See e.g. Mendez v. State*, 716 S.W.2d 712, 713–14 (Tex.App.-Corpus Christi 1986, pet. ref'd) (holding failure to offer military psychiatric records into evidence was not ineffective assistance of counsel). However, we find these cases distinguishable on the basis that other evidence was admitted and considered by the jury which mirrored the medical testimony or evidence not admitted. *See e.g., Mendez*, 716 S.W.2d at 713–14 (noting jury was informed of contents of record from testifying expert).

In the instant matter, there was no other competent evidence from which the jury could even glean Rylander's defense that head trauma and/or high blood sugar level could have resulted in his blacking out. As such, without giving the jury the opportunity to consider Rylander's defense, a conviction on the aggravated assault charges, was a " 'foregone conclusion.' " *See Vasquez v. State*, 830 S.W.2d 948, 951 (Tex.Crim.App.1992) (holding ineffective assistance of counsel where counsel failed to present a jury issue on appellant's sole defense of necessity). Here, counsel's failure to present qualified medical testimony in support of Rylander's only viable defense was so deficient as to fall below an objective standard of reasonableness.

We find trial counsel's error particularly disturbing in light of other related errors which occurred. As noted by the trial court below, the instant matter had been pending for a year. In that time, with knowledge that Rylander's personal physician had not been subpoenaed, trial counsel failed to file a pre-trial motion for

continuance to obtain qualified expert testimony. Taking the time to locate qualified expert testimony was necessary given the fact that it would be required to advance Rylander's only viable defense. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *McFarland,* 928 S.W.2d at 501.

■ Trial counsel also failed to interview the State's rebuttal witness. In response to Rylander's testimony that he was unaware of his actions, the State called on Robert Gradon, a physician assistant, who treated Rylander at the hospital after the incident. Gradon testified that Rylander's neurological exam was normal and that there was no evidence that Rylander suffered a concussion or loss of consciousness. On cross-examination, Gradon admitted he had never spoken to trial counsel prior to trial. Thus, it is axiomatic that trial counsel did not interview Gradon prior to trial. An attorney representing a criminal defendant is charged with making an independent investigation of the facts of the case. *McFarland,* 928 S.W.2d at 501; *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex. Crim.App.1980) (plurality opinion). This encompasses the duty to conduct a legal and factual investigation and to seek out and interview potential witnesses. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex. Crim.App.1990). Had trial counsel interviewed Gradon prior to trial, he would have obtained information that Rylander did not appear to be suffering from a loss of consciousness. This information could have impacted a decision to move forward with trial and the viability of Rylander's defense.

■ The duty to investigate, at least since *Strickland,* is not categorical. *See McFarland,* 928 S.W.2d at 501. Rather, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *See id.* The decision not to investigate " 'must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' " *Id.* However, a conviction can be reversed where a defendant's only viable defense available is not advanced and "there is a reasonable probability that, but for counsel's [failure to advance the defense], the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Duffy* 607 S.W.2d at 517. The failure of trial counsel to offer qualified medical testimony and his failure to investigate Gradon, undermined Rylander's only viable defense.

The record also reflects trial counsel's failures during the punishment phase, including: (1) waiving an opening statement prior to punishment; (2) failing to adequately prepare certain witnesses including defendant; and (3) misunderstanding the law on restitution. While the record reflects that trial counsel called seven witnesses in defense of Rylander, the testimony obtained from these witnesses was not favorable in mitigating punishment and in fact was damaging and prejudicial. *See Bone v. State,* 12 S.W.3d 521, 526 (Tex. App.-San Antonio 1999, pet. granted). For example, on direct examination, Holland testified that Rylander was known to cause a "ruckus." Despite the attempt to paint Rylander as a family man, Holland also testified that the two regularly went to Midnight Rodeo every week. Holland also admitted that Rylander had been thrown out of the bar on prior occasions for fighting over women other than his wife. The majority female jury also heard from Rylander's father who referred to his son's wife as "nag" like "all women." Finally, the jury also heard from one of Rylander's friends, a private investigator, who admitted on direct examination that Rylander had a "mouth" on him and that sometimes

"his mouth [was] bigger than his brain." We cannot find how a reasonably competent attorney would have believed that eliciting such testimony would be sound trial strategy. *See Stone v. State*, 17 S.W.3d 348, 353 (Tex.App.-Corpus Christi 2000, pet. ref'd); *Campbell v. State*, 2 S.W.3d 729, 734 (Tex.App.-Houston [14th Dist.] 1999) *rev'd on other grounds*, 49 S.W.3d 874 (Tex.Crim.App.2001) ("if silent record clearly indicates no reasonable attorney could have made such a trial decision, to hold counsel ineffective is not speculation.").

In closing arguments, trial counsel defined a "criminal" as a person who must be "lock[ed] up." Moments later he then referred to Rylander as "criminal." Trial counsel also argued that the jury should consider the question of whether it was a common occurrence for Rylander to "try and run people down with his truck." Trial counsel posed this question to the jury after it had heard testimony from another security officer that Rylander had tried to run him over a month before the incident. Once again, we cannot find how a reasonably competent attorney would have believed that such a closing statement would be sound trial strategy. *See Stone*, 17 S.W.3d at 353; *Campbell*, 2 S.W.3d at 734.

Finally, the record reflects one of trial counsel's most serious errors. In his closing argument to the jury, trial counsel misinformed the jury as to the law on restitution. Texas law provides that a trial court judge maintains the discretion to order restitution. *See* TEX.CRIM. PROC. CODE ANN. § 42.037 (Vernon Supp.2001). Restitution can be ordered whether a defendant is sentenced to confinement or probation. For most of his closing argument, trial counsel erroneously communicated to the jury that Rylander should be given probation so that he would be required to pay restitution. Thus, trial counsel implied that if Rylander was sentenced to confinement he would not have to pay restitution. The State, on rebuttal, immediately pointed out trial counsel's error, rendering the majority of counsel's closing argument a nullity. This fact coupled with the record's reflection that trial counsel waived an opening statement, confounds our ability to discern what trial counsel's trial strategy was during the punishment phase.

### Conclusion

Individually, not every allegation of ineffectiveness of trial counsel in this case would have shown "a reasonable probability that, but for counsel's professional errors the result would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. However, the "totality of trial counsel's representation" undermines this court's confidence in the conviction. *See Brown*, 974 S.W.2d at 292. Because we hold that Rylander has met the standard under *Strickland*, we sustain his sole issue on appeal and reverse the judgment of the trial court.

Dissenting opinion by: PAUL W. GREEN, Justice.

I respectfully dissent. The majority concludes Rylander's counsel was ineffective because he failed to call a medical witness to support the only viable defense, which was that Rylander's actions at the time of the offense were not voluntary due to a medical condition. There is no evidence, however, that any doctor, including Dr. Ng, was actually prepared to testify in support of Rylander's defense, nor is there evidence of what the doctor would have testified to concerning Rylander's medical condition. Without such evidence, Rylander is unable to show the harm that is required to establish ineffective assistance of counsel.

It is entirely possible that trial counsel was doing his best at presenting a defense with little to work with. There are various possibilities. If, indeed, there was a doctor who could have testified, maybe he was uncooperative. Or perhaps the medical evidence was actually less than beneficial to Rylander and counsel made the appropriate decision not to use it. Or maybe the truth is there never was a doctor. Regardless, we are not in a position, with this record, to make any assumptions concerning counsel's strategy in presenting the involuntariness defense.

To say Rylander's lawyer was ineffective because he failed to present medical testimony when we do not even know if such a witness was available is going too far. Accordingly, I dissent.