# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-18-00216-CR

---

**Roland Darrell Trotter, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 274TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-17-0254, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Roland Darrell Trotter of the third degree felony offenses of assault family violence, repeat offender (Count I), *see* Tex. Penal Code § 22.01(b)(2)(A); violation of a protective order, repeat offender (Count II), *id.* § 25.07(g)(1); and violation of a protective order, family violence (Count III), *id.* § 25.07(g)(2). Following a punishment hearing in which appellant pleaded true to an enhancement paragraph, the trial court sentenced appellant to twelve years' confinement for both Counts I and II, *see id.* §§ 12.33, 12.42(a), and sentenced appellant to a fine of $1,000 and ten years' confinement for Count III, but the court suspended the sentence of confinement for Count III and placed him on community supervision for ten years, *see* Tex. Code Crim. Proc. art. 42A.053. On appeal, appellant claims that he was denied effective assistance of counsel. Because we conclude that appellant has not

demonstrated that his trial attorney's performance was deficient, we affirm the judgments of conviction.

**Background**

Appellant was charged by indictment with three offenses arising out of an incident involving his ex-girlfriend Jennifer Hernandez on or about December 2, 2015, at a hotel where she worked. Count I—assault family violence, repeat offender—included allegations of an April 2010 conviction for assault bodily injury family violence, *see* Tex. Penal Code § 22.01(b)(2)(A) (stating that offense is third degree felony when defendant previously has been convicted of offense against family member or person with whom defendant has or has had dating relationship); Count II—violation of a protective order, repeat offender—included allegations of an April 2014 conviction and a May 2015 conviction for violations of a protective order, *see id.* § 25.07(g)(1) (stating that offense is third degree felony when defendant previously has been convicted two or more times of offense under section); and Count III alleged that appellant violated the protective order by committing family violence against Hernandez, "a protected individual described in the protective order, to-wit: by intentionally and knowingly causing bodily injury to [her] by striking her on or about the head and or body with a hand." The indictment also included an enhancement paragraph. *See id.* § 12.42(a).

The jury trial occurred in January 2018. Appellant pleaded not guilty, but he signed a stipulation of facts in which he stipulated to his previous convictions alleged in the indictment. The exhibits included appellant's stipulation of facts and a copy of the protective order. The protective order was agreed, and appellant signed it on August 29, 2013. It prohibited appellant from, among other actions, communicating with Hernandez, except through

2

his mother or attorneys; going within 200 yards of a location where he knew that she was present; and engaging in conduct directed specifically toward Hernandez "that [was] reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that person"; but it allowed appellant to have visitation with his child at a third-party facility. Appellant and Hernandez are the child's parents. The protective order also stated that it would expire on August 29, 2015, unless appellant "[was] incarcerated on that date in which case the order will remain in effect for one year after the date of [appellant]'s release from incarceration." In the stipulation of facts, appellant also stipulated that he was incarcerated on August 29, 2015, for violation of a protective order and released September 19, 2015.

Based on appellant's stipulation of facts, the trial judge advised the State and appellant that he would "limit—unless some door is opened or you can convince me that there is another evidentiary reason, I'll limit any testimony on prior convictions." The prosecutor responded:

> And we—and that's what we intend to do. We're not going to offer much at all. It's just we might ask the lady: Has—was he ever arrested for the violation previous to this event? She's probably—she's going to say "Yes." But that's it. We're just going to leave it alone and we're not going to talk about any of the facts, any of [the] sentences, anything like that.

The exhibits at trial also included photographs. One of the photographs was of appellant and Hernandez at the hotel and other photographs were of Hernandez's face that were taken after appellant allegedly slapped her. The State's witnesses were Hernandez and one of the responding officers to the incident on December 2, 2015. The jury heard evidence through Hernandez's testimony that appellant assaulted her at the hotel. Hernandez testified that she worked in housekeeping at the hotel; she was at work when appellant was "steady calling" her;

3

they saw each other through a window; he "came through the door"; and she tried to get away from him by going into a storage closet, but he followed her into the closet and "grabbed [her] by [her] neck." She also testified that, during the incident at the hotel, appellant "ripped" her phone out of her shirt's pocket and "slapped the shit out of [her]."

The defense theories to the jury were that the State had not met its burden of proof, focusing on witnesses that the State did not call such as the other responding officer, and that Hernandez's testimony was not credible. The defense called appellant's mother, his fiancée, and Hernandez. His mother and fiancée testified that Hernandez and the child were at the house of appellant's mother at the same time appellant was there in late December 2015. Appellant's fiancée also testified that Hernandez was unhappy about appellant's relationship with his fiancée. Although Hernandez denied that she had contacted appellant—she testified that it was appellant contacting her—she admitted to seeing him, communicating with him, and agreeing to let him bring her food. She testified that she had to communicate with him to "play his cat-and-mouse games."

After the defense passed Hernandez to the State for questioning, the trial court overruled appellant's objection and allowed the State to question Hernandez about her relationship with appellant because the defense had "opened the discussion of the relationship." The trial court concluded that "the door [had] been opened" after the prosecutor made the following argument:

> So we were trying to keep this neat and nice and to the point with this one incident and I think we've gone and the Defense has gone way into the relationship of the parties. To give a fair picture to the jury, according to 38.371 I want to go into the relationship between the defendant and the victim.

4

> I want to talk about their relationship before this event and after and the violence and the protective order violations previous to this event and after. That's per the statute. I would like you to read it and then make the call. It's a family violence.

*See* Tex. Code Crim. Proc. art. 38.371 (authorizing, subject to Texas Rules of Evidence or other applicable law, testimony or evidence "regarding the nature of the relationship between the actor and the alleged victim" in prosecution of certain offenses involving family violence). Following the trial court's ruling, Hernandez testified about other actions by appellant directed toward Hernandez, including describing past incidents that formed the basis of appellant's prior convictions and other incidents in which appellant allegedly committed acts of domestic violence against Hernandez.

The jury found appellant guilty on all three counts, and the punishment phase was tried to the court in March 2018. Appellant pleaded true to the enhancement paragraph. The State called Hernandez who provided further testimony about her relationship with appellant. She testified that their relationship began in 2006 and ended in 2012, that appellant first assaulted her in 2009, and that he had assaulted her multiple other times. She also testified about the negative effect of the December 2015 incident on her life, including losing her job, and her fear of appellant. At the conclusion of the evidence on punishment, the trial court sentenced appellant to twelve years' confinement for both Counts I and II. *See* Tex. Penal Code §§ 12.33 (setting punishment range for second degree felony to be "any term of not more than 20 years or less than 2 years"), 12.42(a) (stating that defendant shall be punished for second degree felony when "it is shown on the trial of a felony of the third degree that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a)"). The trial court sentenced appellant to ten years' confinement and assessed a fine of

$1,000 for Count III, but suspended the sentence of confinement and placed him on community supervision for ten years.  *See* Tex. Code Crim. Proc. art. 42A.053.  The trial court also ordered the sentences to run concurrently.

Appellant filed a motion for new trial, arguing that the other responding officer, who was unavailable at trial, "was material to prove that complainant lied" and that evidence had been destroyed that would show that "complainant lied."  Appellant also filed an amended motion for new trial, which alleged that appellant's trial attorney provided ineffective assistance because he failed to call witnesses during the punishment phase, obtain an investigator for the case, or give a mitigation report.  Appellant's motion for new trial was overruled by operation of law.

**Analysis**

In his sole issue, appellant argues that he was denied effective assistance of counsel because his trial attorney "elicited testimony from the complainant that Appellant committed *additional* violations of a protective order, and then 'opened the door' to specific details of prior domestic violence incidents—after the State had agreed to limit details by stipulation."

**Standard of Review**

To establish ineffective assistance of counsel, an appellant must demonstrate both deficient performance by counsel and prejudice suffered by the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).  The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.  *Strickland*, 466 U.S. at 687–88;

*Nava*, 415 S.W.3d at 307–08; *see also Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013) (explaining that "accused is not entitled to representation that is wholly errorless" and that "reviewing court must look to the totality of the representation in gauging the adequacy of counsel's performance"). The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. "[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Strickland*, 466 U.S. at 697).

Appellate review of counsel's representation is highly deferential; we must "indulge in a strong presumption that counsel's conduct was *not* deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 686. To rebut that presumption, a claim of ineffective assistance "must be 'firmly founded in the record,'" and "'the record must affirmatively demonstrate' the meritorious nature of the claim." *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). Rarely will the trial record by itself be sufficient to demonstrate an ineffective-assistance claim. *Nava*, 415 S.W.3d at 308. "If trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Menefield*, 363 S.W.3d at 593); *Goodspeed*, 187 S.W.3d at 392. Guided by these principles, we turn to appellant's complaint that he was denied effective assistance of counsel.

**Has appellant demonstrated that he was denied effective assistance of counsel?**

Appellant argues that he received ineffective assistance of counsel because his trial attorney "introduced evidence of additional, uncharged violations of a protective order committed by Appellant" and "carelessly 'opened the door' to the admission of detailed prior acts of domestic violence against the complainant, after the State had agreed on the record not to present any information on prior incidents, other than signed stipulations of jurisdictional convictions." *See Tamaz v. State*, 11 S.W.3d 198, 201–02 (Tex. Crim. App. 2000) (explaining that defendant's stipulation to previous convictions that were jurisdictional elements of offense "should suffice when it carries the same evidentiary value as the judgments of prior convictions, yet substantially lessens the likelihood that the jury will improperly focus on the previous conviction or the defendant's 'bad character'"); *see also Hollen v. State*, 117 S.W.3d 798, 801–02 (Tex. Crim. App. 2003) (concluding that trial court did not err in admitting stipulation of prior convictions that were jurisdictional elements of offense charged). Appellant argues that such error "was so egregious as to constitute ineffective assistance as a matter of law," and that "[n]o reasonable trial strategy exists to justify such action."

Appellant focuses on the State's case in chief, in which the State did not introduce evidence about appellant's "prior convictions, extraneous past bad acts or details of the relationship" between appellant and Hernandez other than to offer appellant's stipulation of facts as an exhibit, as compared with Hernandez's testimony after the defense in its case passed her to the State for questioning. At that juncture, the State was allowed to question Hernandez in detail about her relationship with appellant and additional prior incidents in which appellant had violated the protective order and committed acts of domestic violence against Hernandez, including incidents that resulted in appellant's incarceration.

8

"Admitting evidence of prior convictions and other bad acts is generally prohibited during the guilt-innocence phase." *Robles v. State*, 85 S.W.3d 211, 213 (Tex. Crim. App. 2002); *see id.* (explaining that policy, embodied in Texas Rule of Evidence 404(b) and bifurcated trial procedure, "addresses [court's] concern that conviction not be based on the assumption that the accused is a criminal generally or that he is a person of bad character"); *see also* Tex. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Further, evidence of prior convictions to satisfy a jurisdictional element of an offense "is not necessary if the accused stipulates to their existence because the statutory requirement has been satisfied." *Hernandez v. State*, 109 S.W.3d 491, 494 (Tex. Crim. App. 2003); *see id*. at 495 (concluding that trial court erred in overruling defendant's motion to stipulate to prior convictions because defendant's "stipulation would have placed the prior convictions into evidence" and "satisfied the evidentiary requirements regarding stipulations while avoiding the unfair prejudice that would accompany further mention of the convictions").

In this case, the State presented uncontroverted evidence in its case in chief that appellant violated the protective order on December 2, 2015, when he went to Hernandez's place of work and had contact with her there. This evidence included the photograph of appellant and Hernandez standing next to each other at the hotel. The only witness to testify that the alleged assault occurred, however, was Hernandez, making her credibility a critical issue. Generally, it is a sound defense strategy to attack the credibility of the State's key witness, even if it might inadvertently open the door to otherwise inadmissible evidence. *See Garza v. State*, No. 03-13-00180-CR, 2015 Tex. App. LEXIS 3449, at *11–12 & n.29 (Tex. App.—Austin Apr. 9, 2015, pet. ref'd) (mem. op., not designated for publication) (stating that court could not

9

conclude that defense counsel's questioning of State's designated outcry witness, "seeking to discredit her prior testimony recounting the alleged outcries and her truthfulness generally," constituted deficient performance, "even if in doing so counsel might have inadvertently opened the door to evidence related to [another child]'s outcry" and collecting cases reaching similar conclusions concerning claims of ineffective assistance of counsel when defense counsel inadvertently opened door for admission of extraneous-offense evidence).[1]

We further observe that the trial attorney has not had an opportunity to explain his strategy or reasoning.[2] Consequently, the record before this Court is not sufficiently developed to allow us to evaluate the trial attorney's supposedly deficient performance. Absent record evidence regarding counsel's strategy or reasoning, we will presume he exercised reasonable professional judgment. *See Frangias*, 450 S.W.3d at 136 ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of an informed strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate 'unless the challenged conduct was so outrageous that no competent attorney would have engaged in it.'") (quoting *Goodspeed*, 187 S.W.3d at 392); *Hill v. State*, 303 S.W.3d 863,

---

[1] *See, e.g.*, *Josey v. State*, 97 S.W.3d 687, 695–96 (Tex. App.—Texarkana 2003, no pet.) ("We cannot say attempting to discredit one or both of the State's primary witnesses is improper trial strategy or otherwise falls below the level of an objectively reasonable standard of conduct [even though the attempt opened the door to otherwise inadmissible testimony]."); *cf. Taylor v. State*, 442 S.W.3d 747, 751–52 (Tex. App.—Amarillo 2014, pet. ref'd) (concluding trial court abused discretion by refusing to allow defendant to stipulate to one prior conviction for assault on family member and that admitting evidence of unnecessary prior conviction was harmful); *Brown v. State*, 974 S.W.2d 289, 293–94 (Tex. App.—San Antonio 1998, pet. ref'd) (concluding that defendant counsel's performance was deficient and reversing conviction based on combined effect of multiple errors, including opening door to "damaging extraneous evidence").

[2] Although appellant's amended motion for new trial raised a claim of ineffective assistance of counsel, it was based on alleged errors by the trial attorney other than the one that he raises on appeal, and the motion was overruled by operation of law.

879 (Tex. App.—Fort Worth 2009, pet. ref'd) (explaining that generally court does not speculate about trial counsel's strategy or "second guess through hindsight the strategy of counsel at trial" (citing *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.))).

We also observe that evidence about the nature of the relationship between an actor and the alleged victim is admissible to refute a defense theory. *See* Tex. Code Crim. Proc. art. 38.371; *Gonzalez v. State*, 541 S.W.3d 306, 312 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (explaining that article 38.371 permits evidence of relationship between defendant and victim to refute defensive theories, such as that victim fabricated assault and that "offense never occurred"). Irrespective of appellant's stipulation of facts as to his prior convictions, the State was not foreclosed from offering the relationship evidence to refute the defense theory that Hernandez's testimony was not credible. *See Gonzalez*, 541 S.W.3d at 312; *see also Tamez*, 11 S.W.3d at 202 (foreclosing State "from presenting other evidence of the convictions during its *case-in-chief*" when defendant agrees to stipulate to convictions (emphasis added)); *Espinoza v. State*, No. 05-17-00547-CR, 2018 Tex. App. LEXIS 10751, at *15–19 (Tex. App.—Dallas Dec. 21, 2018, no pet.) (mem. op., not designated for publication) (discussing interplay between Texas Rule of Evidence 404(b) and article 38.371 and concluding that it was "well within zone of reasonable disagreement for the trial court to have found in this case that the disputed evidence was admissible for a non-character-conformity purpose"); *Foster v. State*, No. 01-17-00537-CR, 2018 Tex. App. LEXIS 2855, at *8–12 (Tex. App.—Houston [1st Dist.] Apr. 24, 2018, pet. ref'd) (mem. op., not designated for publication) (discussing article 38.371 and rules of evidence in court's determination that trial court did not abuse its discretion in admitting testimony about prior incidents of domestic violence).

Appellant has failed to rebut the "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). We cannot say that "no reasonable trial strategy could justify" the trial attorney's complained-of conduct. *Id.* at 143. Nor can we conclude that his conduct was "so outrageous that no competent attorney would have engaged in it." *See Menefield*, 363 S.W.3d at 593; *see also Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) ("The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel."). Looking to the totality of the trial attorney's representation, we cannot conclude that his performance fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687–88; *Frangias*, 450 S.W.3d at 136. Having found that appellant has not demonstrated deficient performance by his trial attorney, we need not consider the prejudice prong. *See Garcia*, 57 S.W.3d at 440.

## Conclusion

For these reasons, we overrule appellant's issue and affirm the trial court's judgments of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: November 22, 2019

Do Not Publish

12