Clarence HUTCHINSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–82–0931–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 15, 1983.

Rehearing Denied Jan. 12, 1984.

Robert Rice, Angleton, for appellant.

Jim Mapel, Jo Stiles Wiginton, Angleton, for appellee.

Before WARREN, LEVY and DOYLE, JJ.

## OPINION

DOYLE, Justice.

This is an appeal from a conviction for the offense of delivery of a controlled substance, methamphetamine. The jury assessed punishment at fifteen years confinement.

On August 23, 1982, two undercover police officers from the Brazoria County Organized Crime Unit gave appellant $120 in exchange for a package of a white crystalline substance, later identified as methamphetamine. The appellant was arrested on a sealed indictment and charged with the felony of delivery of a controlled substance. The appellant was found guilty and sentenced to fifteen years confinement.

The facts are undisputed, but we feel that a summary of them will aid in evaluating the totality of the representation.

The appellant was a twenty-two year old male who lived in Clute, Brazoria County. Officers of the Brazoria County Organized Crime Unit were working undercover with a confidential informant. On August 23, 1982, the informant, who had criminal cases

pending, set up a deal with the officers whereby the informant would take them to the home of appellant who could direct them in the procurement of certain drugs. Upon arriving at appellant's house, the informant went in, brought appellant out and introduced him to the undercover officers. One of them, Officer Hromadka, offered appellant $100 for a gram of "crank" or methamphetamine. The appellant told the officer he would first have to make a phone call. The officers, the informant, and appellant then went to the Bonanza Steak House in Clute and waited until a third party drove up in a Volvo wagon. Officer Hromadka gave appellant the money which he took to the Volvo and returned with a cellophane zip-lock bag containing two smaller cellophane wrappers. The wrappers contained a white powdery substance which the officer believed to be methamphetamine.

Three days later, the same officers, Paul Hromadka and Larry Bullard, initiated and carried through a similar deal with appellant, except cocaine was involved in the second deal.

In his first of eleven grounds of error, the appellant contends that his conviction should be reversed because he was denied effective assistance of counsel. In support of this contention, appellant alleges over twenty instances of his counsel's ineffectiveness which occurred during the trial.

■ In determining whether effective assistance of counsel has been rendered, the court must review the totality of the representation for evidence of "reasonably effective assistance of counsel." *Ex Parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980). The term has been interpreted to mean "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *Humber v. State,* 624 S.W.2d 814 (Tex.App.—Houston [14th Dist.] 1981) *citing Ex Parte Gallegos,* 511 S.W.2d 510 (Tex.Cr.App.1974).

■ The effectiveness of an attorney's assistance is measured by "the totality" of

the representation of the accused. Therefore, failing to object to every instance of improper evidence, or procedural mistake does not constitute ineffective counsel. *Ex Parte Ewing,* 570 S.W.2d 941 (Tex.Cr.App. 1978); *Long v. State,* 502 S.W.2d 139 (Tex. Cr.App.1973).

■ Furthermore, the court should avoid trying to "second guess" the strategy adopted by counsel at trial. *Faz v. State,* 510 S.W.2d 922 (Tex.Cr.App.1974). The fact that another attorney would have adopted a different trial strategy will not support a finding of ineffective assistance. *Humber, supra* at 815. Each case must be judged on its own merits, and challenges will be sustained only if they are "firmly founded" in the record. *Faz, supra.* However, if the entire record reflects that the defendant did not receive effective assistance, the court will not hesitate to so hold. *Rodriguez v. State,* 170 Tex.Cr.R. 295, 340 S.W.2d 61 (1960).

In *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), the Supreme Court stated:

> [If] the right to counsel [as] guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel . . .

The Texas Court of Criminal Appeals has adopted the standard promulgated in *McMann,* holding that reasonably effective assistance of counsel is demanded of attorneys in criminal cases. *Ex Parte Gallegos, supra.* If the entire record shows that the accused has not been properly represented by his counsel, the court should accordingly so rule. *Rodriguez, supra.*

■ That an attorney has a professional duty to present all available evidence and arguments in defense of his client is a well settled requirement in Texas. Further, trial counsel should seek out and interview potential and known witnesses, and make such independent investigation of the case as will enable him to make a comparison with his client's version of the facts. *Ex Parte Duffy, supra; Thomas v. State,* 550 S.W.2d 64 (Tex.Cr.App.1977).

■ Against the background of the foregoing authorities, we now examine the record in the case before us.

It is obvious from the record that appellant's counsel never intended to present any defense to the drug charge and that the plea of not guilty was never seriously urged. If any trial strategy can be gleaned from this case, it is that appellant's counsel planned to offer no opposition in any form during the guilt/innocence phase of the trial and to try only to secure probation for appellant. In his closing argument appellant's attorney in effect confessed the guilt of his client when he stated:

> That's the way the system works. The prosecutor brings you the evidence against him. I bring you whatever evidence I have in his favor.

The fact that no evidence had been presented on appellant's behalf prompted the prosecutor to make this observation in his closing remarks to the jury. "I think all of you can see quite clearly at this point in time that guilt is not an issue." However, appellant's counsel did not appear to realize that the stronger the State's case of guilt was made, the less likely a jury would be inclined to give probation. Thus, it was of vital importance that appellant's counsel not only present his client's good reputation in the community and his felony-free criminal record, but also prevent the introduction of any extraneous offenses which would prejudice the jury in its consideration of probation.

We fail to find a single instance in which appellant's counsel's cross-examination of the State's witnesses had the effect of challenging their testimony. Indeed, defense counsel's questioning served to bolster the State's case against appellant. On the return to appellant's house from the Bonanza Steak House, the following conversation between appellant (also known as "Peanut") and Officer Hromadka was brought out during the officer's direct examination:

> Q. Do you recall anything involved with anything unusual about the trip from Bonanza directly back to Peanut's home?

> A. On the way back I smelled what appeared to be an odor of marijuana. I did not know where it was coming from from but at the time I knew that Agent Bullard or my C.I. did not have any.

Mr. Lucas:

> Judge, again we would object to this, sir. It relates to an extraneous matter that has no bearing upon any issue in this lawsuit.

The Court:

> All right, I'll sustain this, Mr. Lucas. Strike it. Members of the jury, please disregard that part of the answer dealing with marijuana.

Despite this proper ruling from the court, appellant's counsel completely invalidated it by going back into the marijuana testimony himself on cross-examination and allowing the prosecution witness to expand on it.

(Questions by Mr. Lucas)

> Q. On the way back now, when you told the jury about smelling this marijuana, you don't have any idea who that might have come from; that could have come from this confidential informant, couldn't it?

> A. No, sir, it could not.

> Q. How do you know that?

> A. Because he was seated right beside me and I observed his actions while we were driving.

> Q. Well, now did you mention anything to Peanut about any marijuana?

> A. No, sir, I did not.

> Q. Why didn't you? You're a law officer, aren't you?

> A. Because at the time I wasn't buying marijuana.

> Q. All right. This is not a marijuana case; you didn't file on him for marijuana, did you?

> A. No, sir, I did not.

Originally the jury knew only that the officer had smelled marijuana and that it had been told to disregard that testimony in response to appellant's objection. Appellant's counsel then reopens the discussion about the marijuana and the jury is left

with the obvious conclusion that appellant was a marijuana smoker. The court could not save appellant on this occasion because appellant's counsel had elicited the prejudicial testimony.

Another observation by this court is the trial court's constant intervention during the course of the trial in an effort to protect the rights of appellant. At one stage during the guilt/innocence phase appellant's counsel made two direct inquiries concerning an extraneous offense with the undercover Officer Hromadka, thereby opening the door for the State to prove up the offense in rebuttal. The trial court temporarily rescued appellant thusly:

> The Court: All right, Mr. Dies (State prosecutor), I'm going to deny your request to go into the extraneous offense at this time. However, Mr. Lucas, you're sure treading on tight ground to open the door when you start asking the witness about all arrests and criminal records, and "This is the only thing he's ever done," when everybody in this courtroom except the jury knows that he's got another indictment for delivery of cocaine.

> Mr. Lucas: Thank you, Judge.

> The Court: So, you know, I'm not telling you the strategy to use in your case, but if that keeps coming up I'm not ruling the State out from requesting again out of the presence of the jury to go into it.

Such detailed warning should have been sufficient to bar this extraneous offense from the evidence. However, later in the trial at the punishment stage, appellant's lawyer opened the door himself by bringing out before the jury that appellant was involved in another dope deal with the same officers three days after the one for which he was on trial. With the door thus ajar, the prosecutor made sure the jury understood that there was another drug offense:

> (Questions by the prosecutor)

> Q. So what you're telling the jury is that there was another incident just like the first one with Officer Hromadka?

> A. Yes, there was.

In several cases where counsel failed to object to a series of prejudicial and inadmissible extraneous offenses, the court has found sufficient ineffective assistance to require the reversal of a conviction. *Cude v. State,* 588 S.W.2d 895 (Tex.Cr.App.1979); *Ruth v. State,* 522 S.W.2d 517 (Tex.Cr.App. 1975). In *Cude,* the defense counsel did not object to any testimony regarding several extraneous offenses by the defendant, including references to past robberies, theft of an automobile, and the possession of marijuana. In reversing the conviction, the court emphasized that the numerous extraneous and prejudicial matters, to which counsel failed to object, denied the defendant a fair trial. *Cude, supra* at 897. In our case the error was compounded for it was appellant's counsel who, through ineptness, allowed the extraneous offenses to be introduced. From the foregoing excerpts of the trial court proceedings, it is clear that appellant's counsel simply did not know how to try this type of criminal case. Regardless of what his trial strategy was, appellant's counsel's failed to protect appellant from the adverse effects of the introduction of extraneous offenses and destroyed all hopes of an acquittal or of appellant's being granted probation.

This court is also disturbed by the fact that appellant's counsel apparently made no independent investigation of the facts in the case; showed a gross lack of knowledge and skill in the voir dire examination; and stated for the first time during the punishment phase of the trial that "... I think there's a serious question whether or not this fellow is competent to testify in his own behalf, please, sir." Nevertheless, no motion or request was made for the appointment of an investigator; a prospective juror obviously favorable to appellant was challenged for cause by defense counsel after the State was unable to disqualify her; and no motion was made to give appellant a competency hearing. Such omissions fall far short of the standards required for effective assistance of counsel set forth in *Ex Parte Ybarra,* 629 S.W.2d 943 (Tex.Cr.App.

1982) and *Ex Parte Lilly,* 656 S.W.2d 490 (Tex.Cr.App.1983). We sustain appellant's first ground of error.

While we understand the reluctance of trial judges to interfere with the manner in which defense attorneys plan and implement their trial tactics and strategies, such judges should not hesitate to replace appointed counsel when it is unmistakably apparent that counsel is ineffective because of the lack of trial expertise and knowledge of the facts and law of the subject case. We feel that the trial judge is in the best position to determine from the entire record whether the accused is being adequately represented by counsel, and if such a determination is made, competent counsel should forthwith be substituted to preserve the accused's constitutional guarantee of effective assistance of trial counsel.

The appellant's remaining grounds of error complain of numerous other instances of appellant's counsel's ineffectiveness. We need not consider them in view of our disposition of ground one.

The judgment of the trial court is reversed and the case is remanded for a new trial.