In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00178-CR


______________________________




RUBEN JAMES CARTER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 182nd Judicial District Court


Harris County, Texas


Trial Court No. 903440




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Ruben James Carter was convicted in a jury trial for possession of a controlled
substance, namely, cocaine, with intent to deliver. He pled true to an enhancement
paragraph alleging a prior felony conviction for possession of a controlled substance. The
trial court assessed his punishment at twenty years' imprisonment. Carter appeals,
contending: (1) the evidence is legally and factually insufficient to establish identity; (2) the
evidence is legally and factually insufficient to establish possession; and (3) he was denied
effective assistance of counsel.

Background Facts


 On February 21, 2002, around 10:00 a.m., Mergim Meraia, an officer with the
Houston Police Department (HPD), observed a red Toyota Corolla being driven by a
person whom he suspected of being a fugitive from justice. Meraia followed the Corolla
and activated his police lights. The suspect ran a stop sign and eventually pulled into a
driveway located at 13213 Chiswick. Meraia and the suspect exited their respective
vehicles. The suspect approached Meraia and, when the suspect was approximately eight
feet away from him, Meraia pulled his weapon and told him to stop. The suspect then held
up his hands and backed away from Meraia. The suspect asked Meraia, "[M]an, what's
up, man, what's up?" After three or four seconds, the suspect fled the scene. Meraia
pursued, but failed to apprehend him. Meraia testified the suspect was wearing a black
"do-rag" on his head, a red shirt, and blue jean shorts. 

 The homeowner in whose driveway the Corolla was left and unidentified witnesses
at the scene identified the driver of the Corolla as a person called "Little J." An inventory
of the Corolla yielded an insurance document issued to a person named "Lenit Chambers"
and a bill of sale which identified the Corolla's owner as "Latahia Gulley." Vernon English,
an HPD officer who was assisting Meraia, discovered a two-liter Mountain Dew Code Red
bottle on the passenger seat. English testified codeine syrup is commonly mixed with
Mountain Dew Code Red because the red color of the soda blends with the color of the
codeine syrup. English testified he identified the smell of codeine syrup mixed with soda
in the bottle. English also discovered a small plastic bag containing what appeared to be
crack cocaine on the driver's side floorboard, near the gas pedal. No attempt to lift
fingerprints from the automobile or narcotics containers was made. Connie Dieringer, a
chemist with the HPD, testified that the small plastic bag contained approximately twenty-four grams of cocaine and that the bottle contained approximately 491.1 grams of codeine,
including adulterants and dilutants, in the concentration of 11.1 milligrams of codeine per
100 milliliters. 

 Chambers testified at trial that, at the time of the incident, she owned the Corolla
and carried insurance on the vehicle. Meraia testified Chambers had originally told him
February 21 the car had been stolen. Meraia testified Chambers changed her story during
a telephone conversation February 26. Meraia testified that Chambers told him Carter had
been driving the car and that he admitted to her he had run from the police. Chambers
testified at trial, however, that the car had been stolen. Chambers also denied ever telling
Meraia that Carter had been driving the car or admitted to fleeing. 

 Meraia testified that, on February 22, the day after the incident, he and other officers
returned to the area where the Corolla had been abandoned, where they encountered a
person of similar build and description as the suspect. When this person saw the officers,
he fled along the same route taken by the suspect on the previous day. Meraia
apprehended and arrested this person. Meraia testified he did not remember this person's
name and did not ask if his nickname was "Little J." Meraia further testified this person did
not resemble Carter and was not the individual for whom they were looking. 

 Michael Edwards, the owner of the house where the Corolla had been abandoned,
testified he did not see who drove the automobile. Edwards testified that "Little J" is a
seventeen-year-old boy who lives on the same street as he. Edwards testified that he
knows Carter and that he has never seen Carter drive the Corolla. Edwards further
testified that Carter has never gone by the nickname "Little J" and that Carter's nickname
is "Black." Edwards testified that, two days after the incident, he took Meraia to Little J's
home. 

 Lawrence Campbell, Carter's uncle, testified Carter had borrowed his car, a maroon
1988 Pontiac Grand Am, February 21 around 9:15-9:30 a.m. Campbell's home is
approximately twenty to twenty-five minutes from where the Corolla was abandoned. 
Campbell also testified Carter was wearing a black shirt, blue jean pants, and black tennis
shoes that morning and was still wearing them when he returned the car that evening. 

Standards of Review for Sufficiency of the Evidence

 In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Turner v.
State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 

 In contrast to legal sufficiency, a factual sufficiency review dictates that the evidence
be viewed in a neutral light, favoring neither party. Johnson, 23 S.W.3d at 7; see Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In determining the factual
sufficiency of the evidence to establish the elements of the offense, we view all the
evidence in a neutral light and set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong, or so weak as to be clearly
wrong or manifestly unjust. Johnson, 23 S.W.3d at 7; Clewis, 922 S.W.2d at 129.
"However, a factual sufficiency review must be appropriately deferential so as to avoid the
appellate court's substituting its own judgment for that of the fact finder." Jones v. State,
944 S.W.2d 642, 648 (Tex. Crim. App. 1996); see Clewis, 922 S.W.2d at 133. "The court's
evaluation should not substantially intrude upon the jury's role as the sole judge of the
weight and credibility of witness testimony." Jones, 944 S.W.2d at 648.

Sufficiency of the Evidence for Identity

 Carter contends there is insufficient evidence to support a finding he was the person
who committed the crime. Carter contends the inadequate police investigation, coupled
with the fact he was not arrested at the scene, and no narcotics were found on him when
arrested, indicates reasonable doubt he was the driver of the automobile. He argues
Meraia could not have reliably identified him in the brief time available. Further, Carter
contends fingerprints on the narcotics containers was the only direct evidence that could
have possibly linked him to the crime. Carter argues that the unknown witnesses at the
scene identified the driver as "Little J." Because Edwards testified Carter is not "Little J,"
Carter contends the evidence is insufficient to support the finding he was the driver of the
Corolla. Carter also contends that, because Campbell's description of the clothing Carter
was wearing the morning before the incident, and was still wearing that evening, was
different from the description given by Meraia, it establishes Carter was not the driver of
the Corolla.

 The State was required to prove Carter was the perpetrator of the crime. Giesberg
v. State, 984 S.W.2d 245, 250 (Tex. Crim. App. 1998). While it may have been desirable
to fingerprint the evidence, the State can prove identity through other means. Meraia
unequivocally identified Carter at trial as the driver of the Corolla. The testimony of a single
eyewitness can be sufficient to support a conviction. Aguilar v. State, 468 S.W.2d 75, 77
(Tex. Crim. App. 1971); Pitte v. State, 102 S.W.3d 786, 794 (Tex. App.-Texarkana 2003,
no pet.). The witnesses who identified the driver as "Little J" did not testify at trial, and we
cannot say the great weight and preponderance of the evidence indicates the driver was
actually "Little J." Further, the credibility of the witnesses is within the province of the jury. 
Jones, 944 S.W.2d at 648. The jury was entitled to disbelieve Campbell and Edwards if
it chose to do so. Taken in the light most favorable to the jury, legally sufficient evidence
exists to support the verdict. Viewing the evidence neutrally, we cannot say the evidence
indicates Carter was not the driver by the great weight and preponderance of the evidence
or that the evidence is so weak as to be clearly wrong or manifestly unjust.

Sufficiency of the Evidence for Possession with Intent to Deliver

 Carter contends insufficient evidence exists to support a finding he possessed the
contraband. Carter submits the evidence does not show that he was the driver or that he
possessed the contraband. The State was required to prove that Carter exercised care,
custody, control, or management over the contraband and that he knew the matter he
possessed was contraband. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App.
1985).

 When the contraband is not found on the accused's person or it is not in the
accused's exclusive possession, additional facts must affirmatively link the accused to the
contraband. Jones v. State, 963 S.W.2d 826, 830 (Tex. App.-Texarkana 1998, pet. ref'd). 
To show possession, the State can use direct or circumstantial evidence. Id. This Court
has held that the following factors should be considered when evaluating whether an
affirmative link exists:

 1) the defendant's presence when the search was executed; 2) whether the
contraband was in plain view; 3) the defendant's proximity to and the
accessibility of the contraband; 4) whether the defendant was under the
influence of a controlled substance when arrested; 5) whether the defendant
possessed other contraband when arrested; 6) whether the defendant made
incriminating statements when arrested; 7) whether the defendant attempted
to flee; 8) whether the defendant made furtive gestures; 9) whether there
was an odor of the contraband; 10) whether other contraband or drug
paraphernalia was present; 11) whether defendant owned or had the right to
possess the place where the drugs were found; and 12) whether the place
the drugs were found was enclosed. 


Id.; see Chavez v. State, 769 S.W.2d 284, 288-89 (Tex. App.-Houston [1st Dist.] 1989,
pet. ref'd). 

 There is sufficient evidence that affirmatively links the driver to possession of the
substances. The driver was the sole occupant of the car. The cocaine and codeine were
in plain view of the driver and easily accessible to him. Further, the driver fled from the
police. English and Sutton both testified the amount of the cocaine exceeded any amount
a person would have for personal use. Legally and factually sufficient evidence exists to
support a finding the driver possessed the controlled substances. Since, as discussed
above, sufficient evidence exists to support the jury's finding that Carter was the driver,
sufficient evidence exists to support the jury's finding that Carter possessed the
substances.

Effective Assistance of Counsel

 Carter contends he was denied effective assistance of counsel. He argues that
evidence exists that could have exonerated him. Carter's attorney at trial allegedly failed
to investigate whether another man the police had in custody committed the crime. 
Further, Carter asserts that failure to object to hearsay, combined with other errors,
resulted in ineffective assistance of counsel.

 Both the Sixth Amendment and the Texas Constitution confer a right to effective
representation by counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. If counsel's
performance is ineffective, the conviction cannot stand. The Texas Court of Criminal
Appeals has held that the Texas Constitution does not impose a higher standard than the
Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994);
Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). The Sixth Amendment
standard, established by Strickland, requires a defendant alleging ineffective assistance
of counsel to show that his counsel's performance at trial was deficient and that counsel's
deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668
(1984); see also Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). 

 To satisfy the deficiency prong of the test, Carter must prove, by a preponderance
of the evidence, that his counsel's representation fell below the objective standard of
professional norms. Bone, 77 S.W.3d at 833. There is a strong presumption that
counsel's performance was adequate. Id. An appellate court should not "conclude the
challenged conduct constituted deficient performance unless the conduct was so
outrageous that no competent attorney would have engaged in it." Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001). 

 Carter alleges in his affidavit supporting his motion for new trial that counsel failed
to investigate whether another man the police had in custody committed the crime. 
Ineffective assistance of counsel claims "must be firmly founded in the record." Thompson
v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). Affidavits attached to a motion for
new trial are not evidence unless introduced as evidence at the hearing. Stephenson v.
State, 494 S.W.2d 900, 909-10 (Tex. Crim. App. 1973); Martins v. State, 52 S.W.3d 459,
468 (Tex. App.-Corpus Christi 2001, no pet.). The record does not indicate Carter
requested a hearing on his motion, and Carter does not argue that failure to grant a
hearing was reversible error. "If counsel's reasons for his conduct do not appear in the
record and there is at least the possibility that the conduct could have been legitimate trial
strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance
claim on direct appeal." Ortiz v. State, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002)
(counsel's failure to object to state's challenges for cause not ineffective assistance). 
Because the record does not contain evidence that establishes counsel failed to
investigate, (1) Carter does not overcome the presumption that counsel's actions were
adequate.

 Carter also argues that trial counsel's failure to object to hearsay, combined with
other errors, resulted in ineffective assistance of counsel. The constitutional right to
counsel does not mean errorless counsel. See Ex parte Welborn, 785 S.W.2d 391, 393
(Tex. Crim. App. 1990). An ineffective assistance of counsel claim cannot be based on a
difference of opinion concerning strategy. "[T]he defendant must prove, by a
preponderance of the evidence, that there is, in fact, no plausible professional reason for
a specific act or omission." Bone, 77 S.W.3d at 836. Failing to object to every instance
of improper evidence does not necessarily constitute ineffective assistance of counsel. 
Hutchinson v. State, 663 S.W.2d 610, 612 (Tex. App.-Houston [1st Dist.] 1983, pet. ref'd). 
Plausible professional reasons exist for not objecting to hearsay. Further, ineffective
assistance of counsel claims must be based on the totality of the circumstances. Welborn,
785 S.W.2d at 393. Based on the totality of the circumstances, Carter has not overcome
the presumption that counsel's actions were adequate.

Summary and Conclusion

 The evidence was legally and factually sufficient to establish Carter's identity as the
perpetrator of the crime and to prove he had possession of the controlled substance. 
Further, the record fails to show Carter was denied effective assistance of counsel.

 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: May 14, 2003

Date Decided: September 29, 2003


Do Not Publish





1. Direct appeal is a poor vehicle to bring an ineffective assistance of counsel claim. 
Direct appeals often present a limited record for review of the typical issues raised in an
ineffective assistance point. One way to get evidence of counsel's trial strategy or other
matters in the direct appeal record is through a hearing on a motion for new trial. Another
way to develop a proper record is through a hearing in a habeas corpus collateral attack. 
See generally Tex. Code Crim. Proc. Ann. art. 11.01, et seq. (Vernon 1977 & Supp. 2003).



font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:Shruti;
 mso-ascii-font-family:Shruti;
 mso-hansi-font-family:Shruti;
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:Shruti;
 mso-ascii-font-family:Shruti;
 mso-hansi-font-family:Shruti;
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-158-CR%20In%20re%20Brown%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-10-00158-CR

                                                ______________________________

 

 

 

                                                    IN
RE:  PRINCE BROWN, JR.

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                            Memorandum
Opinion by Justice Moseley

                                                                              

                                                                              








                                                     MEMORANDUM 
OPINION

 

            As best as we can understand from
his rather convoluted petition for relief, Prince Brown, Jr., an inmate
incarcerated in the Texas Department of Criminal Justice, proceeding pro se,
petitions this Court, requesting that we order the named respondent, Joe Black,
the Criminal District Attorney of Harrison County, to produce and provide him
with copies of the arrest offense reports from several of Browns arrests.[1]  

            In order to be entitled to mandamus
relief in an action such as this, the relator must establish two essential
requirements:  (1) that the act sought to
be compelled is purely ministerial, as opposed to discretionary or judicial in
nature, and (2) no other adequate remedy at law is available.  Stearnes v. Clinton, 780 S.W.2d 216,
219 (Tex. Crim. App. 1989).  Brown has
not provided us with a record that shows that he has made any request of the
trial court to perform a nondiscretionary act.  See
Barnes v. State, 832 S.W.2d 424, 426 (Tex. App.Houston [1st Dist.] 1992,
orig. proceeding). 

            Browns
petition requests relief which this Court lacks jurisdiction to grant.  The petition requests relief against
Black.  This Court lacks jurisdiction to
issue a writ of mandamus against a county attorney or a district attorney.  See Tex. Govt Code Ann. § 22.221 (Vernon
2004).  Therefore, we deny the petition
for writ of mandamus.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          September
1, 2010

Date Decided:             September
2, 2010

 

Do Not Publish











[1]Brown
does not seek the arrest offense reports relating to any appeal pending before
this Court.