

NUMBER 13-11-00130-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**MARILYN LATIMER WILEY,**

**Appellant,**

**v.**

**THE STATE OF TEXAS,**
**Appellee.**

**On appeal from the 24th District Court**
**of Jackson County, Texas.**

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes**
**Memorandum Opinion by Justice Rodriguez**

Appellant Marilyn Latimer Wiley challenges the revocation of her deferred adjudication community supervision and adjudication of guilt on charges of theft. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(5) (West Supp. 2010). By two issues, Wiley argues that: (1) the trial court erred in admitting her tax returns as evidence of tampering

with governmental records and fraud on the United States government; and (2) she received ineffective assistance of counsel. We affirm.

## I. Background

Wiley was indicted in 2002 for third-degree felony theft. *See id.* In May 2005, Wiley pleaded guilty to the offense, and pursuant to a plea bargain with the State, the trial court deferred Wiley's adjudication and placed her on community supervision for a term of five years. In August 2005, the trial court extended Wiley's deferred adjudication community supervision for five years, causing her term to end in May 2015.

In January 2011, the State moved to revoke Wiley's community supervision and adjudicate guilt. In its motion to revoke, the State alleged that Wiley committed twenty-seven violations of the terms of her community supervision, including committing the following offenses: twelve counts of forgery; two counts of fraudulently possessing identifying information; one count of credit card abuse; two counts of tampering with United States governmental records; three counts of fraud on the United States government; one count of theft; two counts of perjury; and one count of failing to appear. The State also alleged that Wiley traveled outside of Texas without permission and failed to report to her probation officer, abide by her curfew, and pay restitution, all of which were conditions of her community supervision.

At the revocation hearing, Wiley pleaded "not true" to twenty-six of the violations alleged by the State; Wiley pleaded "true" to violation number twenty-three, which alleged that she committed forgery by signing the name of the priest supervising her community service hours on her community service form and presenting the form to her probation officer. After hearing the State's evidence, the trial court found all alleged violations to be

2

true, revoked Wiley's community supervision, adjudicated her guilt, and sentenced her to ten years' incarceration.   This appeal followed.

## II.   Admission of Tax Returns at Revocation Hearing

By her first issue, Wiley argues that the trial court erred in admitting two exhibits related to Wiley's federal tax return.   Wiley argues that the exhibits were admitted in violation of the United States Code and that their admission harmed her because "it was the only evidence the State could produce that showed that [Wiley] falsified or tampered with government documents."   However, given that Wiley's argument applies to only five of the twenty-seven alleged violations of her community supervision, we must affirm the trial court's revocation and adjudication.

We review a trial court's order revoking community supervision for an abuse of discretion.   *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)).   The State bears the burden of showing by a preponderance of the evidence that the defendant committed a violation of her community supervision conditions.   *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).   If the State does not meet its burden of proof, the trial court abuses its discretion in revoking the community supervision.   *Cardona*, 665 S.W.2d at 493-94.

Proof by a preponderance of the evidence of any one of the alleged violations of the community supervision conditions is sufficient to support a revocation order. *Antwine v. State*, 268 S.W.3d 634, 636 (Tex. App.—Eastland 2008, pet. ref'd) (citations omitted).   In fact, a plea of true, standing alone, supports the revocation of community supervision.   *See Cole v. State*, 578 S.W.2d 127, 128 (Tex. Crim. App. 1979) (holding a

3

plea of true to one allegation is sufficient to support revocation of probation); *see also Grover v. State*, No. 13-09-00102-CR, 2009 WL 3247843, at *1 (Tex. App.—Corpus Christi July 2, 2009, pet. ref'd) (mem. op., not designated for publication). Thus, to obtain reversal of a revocation order, the appellant must successfully challenge each ground on which the trial court relied to support revocation. *Sterling v. State*, 791 S.W.2d 274, 277 (Tex. App.—Corpus Christi 1990, pet. ref'd) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); *Grim v. State*, 656 S.W.2d 542, 543 (Tex. App.—Corpus Christi 1983, no pet.)).

Here, even were we to assume that the trial court erred in admitting the complained-of evidence, Wiley's harm argument applies only to five of the twenty-seven violations alleged by the State.[1] Wiley brings no challenge on appeal to the remaining twenty-two violations. In fact, she pleaded true to one of the alleged violations, and a plea of true to one violation, alone, is sufficient to support revocation. As such, the admission of the tax return evidence was not necessary to Wiley's revocation, and we cannot conclude that the trial court abused its discretion in revoking Wiley's community supervision and adjudicating her guilt. Wiley's first issue is overruled.

### III. Ineffective Assistance of Counsel

By her second issue, Wiley argues that she received ineffective assistance of

---

[1] Wiley also argues that the "evidence [led] directly to the finding of 'true' to the State's allegations and the use of the maximum sentence. Without this evidence, at the minimum, [Riley]'s sentence would have been less than [she] received." Having reviewed the record, the tax return evidence was unrelated to most of the remaining offenses that formed the bases of the State's motion to revoke, including forgery, fraudulent possession of identifying information, credit card abuse, perjury, and failure to appear. As such, we are not persuaded that the tax return evidence alone led to the trial court's determination that the alleged violations were true. Moreover, given the volume of offenses and other violations committed by Wiley that led to her revocation, we are likewise not persuaded that the tampering with governmental records and fraud against the United States offenses were the sole bases for the ten-year sentence imposed by the trial court.

4

counsel when her defense counsel stated the following in his closing argument at the revocation hearing:

> But also in this particular case I think it's important to note that Ms. Wiley has not committed the crime of the century. She has involved her parents in the first instance and her daughter in the second instance and it appears to me that not only were here [sic] parents forgiving towards her, but that her daughter has some indication that she went on for a period of time and didn't do anything about it at all, including closing the account, which could have prevented some of these things from happening. So for those reasons we would ask that the Court revoke her probation and send her to a restitution center so that she might complete her payments, and continue her on probation after she's done that.

Wiley argues that the foregoing was an admission by counsel of Wiley's guilt, which is deficient performance that is plain from the record. Wiley argues that she was prejudiced by this deficiency because the trial court gave her the maximum sentence.

To establish ineffective assistance of counsel, Wiley must show that: (1) her attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for her attorney's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Jaynes v. State*, 216 S.W .3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). Whether this test has been met is to be judged on appeal by the totality of representation, not by any isolated acts or omissions. *Jaynes*, 216 S.W.3d at 851. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983).

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Wiley rebuts the strong presumption that her counsel's

5

conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. Wiley must prove ineffective assistance of counsel by a preponderance of the evidence. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)). To prove that counsel's performance fell below the reasonableness standard, "the record must contain evidence of counsel's reasoning, or lack thereof." *Moreno v. State*, 1 S.W.3d 846, 865 (Tex. App.—Corpus Christi 1999, pet. ref'd).

Generally, the trial record will not be sufficient to establish an ineffective assistance of counsel claim.[2] *Thompson*, 9 S.W.3d at 813-14; *Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). This is true because, normally, a record is silent with regard to counsel's decision-making processes, and therefore, appellant often cannot rebut the presumption that counsel's performance was the result of sound or reasonable trial strategy. *Strickland*, 466 U.S. at 688; *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991); *see Jaynes*, 216 S.W.3d at 855. In the case of such a silent record, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

Citing *Long v. State*, Wiley argues that her counsel's performance was "both objectively unreasonable and objectively deficient" because counsel's argument was "effectively an admission of [Wiley's guilt]" that "destroy[ed] [Wiley]'s only defense." *See*

---

[2] Although Wiley filed a motion for new trial, the trial court denied it without a hearing; thus no evidence regarding trial counsel's performance was elicited at that stage.

764 S.W.2d 30, 31 (Tex. App.—San Antonio 1989, pet. ref'd); *see also Hutchinson v. State*, 663 S.W.2d 610, 613-15 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd) (finding ineffective assistance of counsel where it was "obvious from the record that appellant's counsel never intended to present any defense to the drug charge and that the plea of not guilty was never seriously urged"). Wiley argues that counsel's actions "cannot be classified as trial strategy." We disagree.

In *Long*, defense counsel expressly stipulated to evidence of his client's voluntary intoxication, which directly undercut their insanity defense. 764 S.W.2d at 31. The trial court then "expressly based its rejection of appellant's defense on the damaging stipulated statement regarding voluntary intoxication." *Id.* In *Hutchinson*, defense counsel presented no evidence in support of appellant's defense and then effectively "confessed the guilt of his client" by making the following statement in closing argument: "That's the way the system works. The prosecutor brings you the evidence against him. I bring you whatever evidence I have in his favor." 663 S.W.2d at 613. The court found that defense counsel "made no independent investigation of the facts in the case," "showed a gross lack of knowledge and skill in the voir dire examination," wholly failed to effectively cross-examine witnesses, and did not object to the admission of crucial evidence and testimony that was inadmissible. *Id.* at 614.

Here, there was no stipulation, as in *Long*, or blatant abdication of the defense, as in *Hutchinson*. Rather, defense counsel's statements in this case can be reasonably construed as a request for leniency in the face of what appeared to be overwhelming evidence of Wiley's violations. We cannot conclude this was an unreasonable strategy in a revocation hearing under the facts of this case. Wiley's counsel's performance was

not objectively deficient.

Moreover, even were we to determine that defense counsel's performance was deficient, Wiley would not be able to show prejudice. Wiley's one plea of true to the State's alleged violations supported the trial court's revocation of her community supervision. *See Cole*, 578 S.W.2d at 128. Further, especially in light of the numerous violations that were not addressed by or related to the complained-of statements of counsel, Wiley has not shown how the complained-of statements produced the prejudice she claims, i.e., the length of sentence imposed by the trial court.

In sum, we conclude that defense counsel did not perform deficiently, and even if he had, the complained-of actions did not change the result of the proceeding. Wiley's second issue is overruled.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 12th
day of January, 2012.