**Opinion issued December 19, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00374-CR

———————————

**DELIA JAZMIN DELMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1529893**

---

## MEMORANDUM OPINION

Delia Delmas was charged with driving while intoxicated. Because she had earlier DWI convictions, this offense was charged as a felony. The jury found her guilty. She elected to have the jury determine her sentence, and she was sentenced to confinement for seven years. Delmas moved for a new trial, arguing that she

received ineffective assistance of counsel in the guilt-innocence and punishment phases of her trial. The trial court held a hearing and denied her motion.

In a single issue, Delmas contends the trial court abused its discretion in denying her motion for new trial.

We affirm.

## Background

L. Jenkins's vehicle was struck in the parking lot of El Fuego's bar on Durham Drive around 11 p.m. one Sunday evening. Jenkins testified that her car was stationary as she waited for traffic to clear on Durham so she could exit the parking lot. She saw a small truck in the parking lot begin to reverse. She thought it was going to hit her car, so she honked her horn. The bike rack on the back of the truck struck Jenkin's car. The driver of the truck was Delmas.

Jenkins testified that Delmas got out of her truck, refused to exchange insurance information, and then got back into her truck to leave. Jenkins went into El Fuego's to call the police, and other people approached Delmas to persuade her to stay. Delmas went into El Fuego's shortly after Jenkins did. Delmas took Jenkins's car keys from her and walked to the exit. Jenkins followed her and took her car keys back. The police arrived a few minutes later.

A. Sierra with the Houston Police Department testified that he responded to the call for police assistance about five minutes after receiving the call. As he

2

approached Delmas, he noticed that Delmas was "swaying," "staggering," and "stumbling" as she walked. Sierra noticed a strong odor of alcohol when Delmas spoke. Sierra asked Delma what happened. He specifically asked her if she had been backing up, and she said yes. Delmas later denied that she had been driving. Sierra testified he tried to perform field sobriety tests on Delmas at the bar but Delmas did not follow his instructions. Video of these interactions was admitted as evidence and played for the jury.

Sierra wanted to perform additional intoxication tests at the police station, but Delmas refused to participate. Delmas also refused to provide breath and blood samples.

Sierra prepared an affidavit in support of a search warrant, presented the affidavit to the magistrate judge, and obtained a search warrant authorizing a blood draw to test Delmas's blood-alcohol content. Delmas's blood was drawn at the police detention facility and the blood-test results were presented as evidence at trial.

K. Osbourne, a DWI technician with the Houston Police Department testified that she drew Delmas's blood the evening of her arrest. Osbourne drew the blood in a sterilized location in the detention center and followed the procedures for collecting a blood sample without contamination. C. Rogers, a toxicology forensic analyst with the Houston Forensic Science Center testified next. She described the protocol for testing blood, testified that she followed that protocol, and told the jury

3

that Delmas's blood-alcohol level was .242, which was three times the legal limit to drive in Texas.

When the State rested, Delmas rested as well, without Delmas testifying or calling any witnesses. A stipulation was read to the jury about Delmas's two prior DWIs. Delmas stipulated that, in 2008, she was convicted of the Class B misdemeanor offense of driving while intoxicated and sentenced to 180 days in jail, probated for one year, and that, in 2009, she was convicted of the Class A misdemeanor offense of driving while intoxicated and sentenced to 60 days in jail.

Delmas's defensive theory in closing argument was that she had admitted to Officer Sierra that she "backed out," but it was not an admission that she had been driving her car. Instead, it meant only that Delmas had gone "back out" to her car:

> So, the question is: Well, what is the interpretation of "backed out?"
> Does that mean I got in the vehicle and drove or does that mean I went
> back out to my car?

The defense argued that the State had not proven beyond a reasonable doubt that Delmas was driving her truck when the collision occurred.

The jury unanimously convicted Delmas of driving while intoxicated. The trial then moved into the punishment phase. Delmas's attorney stated that the defense would not be putting forth punishment evidence:

> Just wanted to put briefly on the record that for punishment, it's my
> understanding that we are just re-offering the judgments and the case in
> chief. Defense is not putting on any additional punishment evidence.
> The defendant is not choosing to testify in her own behalf and has not

4

brought any additional witnesses. It is not due to lack of witnesses. This is just what we have decided to do for trial strategy.

The State relied on the evidence it admitted during the guilt-innocence phase and did not present any new evidence other than Delmas's second written stipulation, which was read to the jury. The second stipulation disclosed that Delmas had been convicted of a third DWI in 2012 and sentenced to 10 years of confinement, which was probated for three years. Both sides then rested.

In closing, Delmas's attorney asked the jury to sentence Delmas to the minimum sentence allowed—two years—highlighting that Delmas appeared to have a problem with alcohol but there had been no evidence of any other criminal conduct. The State's attorney highlighted that this was Delmas's fourth DWI and asked the jury to distinguish between a drinking problem and a drunk-driving problem that endangers other members of the community. The State asked the jury to consider a sentence at the "upper end of the punishment range," which would mean up to 10 years of confinement.

The jury sentenced Delmas to seven years of confinement. The trial court accepted the verdict, entered a judgment of conviction for the offense of third-degree felony Driving While Intoxicated, and sentenced Delmas to seven years of confinement.

Delmas filed a motion for new trial alleging that she received ineffective assistance of counsel, and the trial court held a hearing. Delmas's trial counsel,

Dustan Neyland testified. He explained that he had advised Delmas about the phases of trial, Delmas had stated that she did not want to testify and did not want Neyland to involve any other possible witnesses in her criminal trial, and his trial strategy had centered on raising doubt whether Delmas had been driving the truck when the collision occurred.

The trial court denied Delmas's motion. Delmas appealed.

## Motion for New Trial

In a single issue, Delmas contends the trial court erred in denying her motion for new trial.

### A.    Standard of review and applicable law

The standard of review for a trial court's order denying a motion for new trial is abuse of discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). An appellate court will not substitute its judgment for that of the trial court; instead, the appellate court decides only whether the trial court's decision to overrule the motion for new trial was arbitrary and unreasonable. *Id.* The defendant-appellant ordinarily has the burden of proof on a motion for new trial. *See Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995). As a general rule, appellate courts should afford almost total deference to the trial court's determination of facts supported by the record. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Delmas moved for a new trial on a claim of ineffective assistance of counsel. We evaluate claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceedings would have been different. *Id.* at 687–94; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A defendant must establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make a showing under either prong defeats an ineffective-assistance claim. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance and trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. In determining whether there was a reasonable probability of a different result but for the ineffective assistance, we look for a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

7

**B.     First claim of ineffectiveness: Failure to pursue a motion to suppress**

Delmas first argues that Neyland was ineffective because he failed to pursue a motion to suppress evidence of her blood-alcohol content on an argument that the search warrant was invalid. At the hearing on her motion for new trial, Delmas's counsel asked Neyland about the handwritten time listed on the affidavit in support of obtaining the search warrant compared to the handwritten time listed on the search warrant itself. Neyland testified that the affidavit listed a time of 1:21 a.m. and the resulting search warrant listed a time of 1:30 a.m. Delmas's counsel asked whether the handwritten time on the search warrant might actually by 1:00 a.m. (not 1:30 a.m.). Neyland agreed that it was possible.[1]

Delmas's post-conviction argument is that the possibility that the arrest warrant was signed at 1:00 a.m. required Neyland to pursue a motion to suppress on the theory that a search warrant that preexists the affidavit in support of a search warrant is invalid.

We cannot agree that the trial court erred in denying the motion for new trial on this basis. Both the affidavit and the warrant were before the court. The affidavit lists a specific police department incident number; provides details of Delmas's arrest, signs of intoxication, and refusal to consent to a blood test; and requests a

---

[1]     *See* addendum.

warrant to obtain a sample of Delmas's blood. The handwritten time on the affidavit, signed by Officer Sierra, is 1:21 a.m.

The arrest warrant identifies Officer Sierra by name as the officer who has presented an affidavit in support of a request for a search warrant. It states that the warrant is requested to obtain a sample of Delmas's blood. The search warrant references the same specific police incident number listed in the officer's affidavit. The arrest warrant states that Officer Sierra's affidavit "is attached hereto and expressly made a part hereof for all purposes." The arrest warrant is signed by a magistrate judge and a time of issuance is handwritten on the warrant, as shown in the addendum to this memorandum opinion.

It is not reasonable to contend that a search warrant that is signed by a magistrate, references the name of the officer who presented the affidavit, includes the incident number from the affidavit, and has the affidavit attached to it, somehow was prepared before the affidavit that supplied all the relevant information included in the warrant. The magistrate's handwriting in specifying the time of issuance may not have been clear, but none of the information the magistrate included in the body of the search warrant would have been available to or known by the magistrate without the magistrate first reviewing and considering the officer's affidavit. Had events occurred in the reverse order, the magistrate could not have known the information she included in the warrant.

Delmas's argument does not provide a viable basis for suppression of her blood-test results. Accordingly, Delmas cannot establish how she was prejudiced by Neyland's failure to pursue such a suppression motion. *See Strickland*, 466 U.S. at 694 (requiring defendant-appellant to show a reasonable probability that result of proceeding would have been different to establish ineffective assistance of counsel). We conclude the trial court did not abuse its discretion in denying Delmas's motion on this argument.

## C. Second claim of ineffectiveness: Failure to hire a toxicology expert

Next, Delmas argues that Neyland was deficient because he failed to hire a toxicology expert or to "request or subpoena any records about the lab technician's qualifications or their personnel file."

During opening statements at the start of the guilt-innocence phase of the trial, Delmas's trial counsel, Neyland, explained the defensive theory of the case to the jury. Neyland told the jury that they would see video evidence of Delmas engaging in behavior that she was embarrassed about. He conceded that Delmas appears drunk in the video but argued that the evidence would not establish she had been driving:

> You're going to see a video that is an embarrassment to Ms. Delmas. She didn't want to watch the whole thing when we were getting ready. She's yelling at the cop and she's mad. She's angry. She's being accused of something she didn't do. She's like yes, I'm intoxicated. I'm publicly intoxicated, but I was not driving that car. So, you're going to see some things that are probably going to upset you. Probably going to get angry about the way that she acts, cussing out the officer, saying some mean things. But it's because she's being wrongfully accused for

something she didn't do. You want to put her in a jail for the night, give her a Class C ticket for public intoxication? Darn right, do it. But the evidence is not going to support that she's operating that motor vehicle. She merely got in to get her stuff out and that is when the other lady hit her bike rack. That's what the evidence is going to show.

Delmas's argument at the new-trial hearing that her attorney had been deficient for failing to hire a toxicologist to challenge whether she was drunk ignores the trial strategy implemented. At the hearing, Neyland explained that Delmas's blood-alcohol content was "really high" and not close to the legal limit. Plus, there was video evidence of Delmas's interactions with Officer Sierra. Those facts informed their trial strategy. The defense chosen was to raise doubt whether Delmas had been driving the truck, not to challenge her intoxication.

The trial court did not abuse its discretion in denying a motion for new trial premised on ignoring the chosen trial strategy and, with hindsight, advocating for an alternative trial. *See Hutchinson v. State*, 663 S.W.2d 610, 612 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd) (stating that appellate court should not "second guess" strategy adopted by trial counsel and that "fact that another attorney would have adopted a different trial strategy will not support a finding of ineffective assistance").

## D.    Third claim of ineffectiveness: Failure to interview witnesses

Next, Delmas asserts that Neyland was deficient in failing to interview witnesses to testify at either phase of the trial.

11

Neyland testified that his investigator interviewed witnesses pretrial, including the other driver and two bartenders. The bartenders began dodging further involvement before the time Neyland would have interviewed them personally. Regarding punishment witnesses, Neyland testified that Delmas did not give him information about any potential witnesses to testify on her behalf. Neyland's understanding of Delmas's position was that "she did not want to get anybody else additionally involved" in her criminal trial. He stated that she did not provide names of any witnesses for him to call.

Neyland read the affidavit Delmas prepared in support of her motion for new trial. He testified that he had discussed the punishment phase of the trial with her. If her statements in her affidavit were true—that she did not understand that she could have called witnesses in the punishment phase even if she did not call any witnesses during the guilt-innocence phase—then Delmas must have misunderstood his explanation of the legal proceedings. In other words, according to Neyland, he did not fail to explain it to her; she apparently failed to understand what he explained.

Delmas's allegation of ineffectiveness, though, is not Neyland's failure to ensure his client understood him. Instead, she argues he was deficient in failing to pursue trial witnesses to testify on Delmas's behalf. But Neyland explained at the hearing that the trial strategy was to not pursue other witnesses because Delmas told him she did not want other people involved in her criminal trial. The trial court

12

reasonably could have found Neyland's testimony credible. *See Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999).

On this evidence, the trial court did not abuse its discretion in denying Delmas's motion for new trial. *See Strickland*, 466 U.S. at 687; *see also Lester v. State*, No. 01-10-00026-CR, 2011 WL 148118, at *8–10 (Tex. App.—Houston [1st Dist.] Jan. 13, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that trial court reasonably could have found trial counsel credible and disbelieved defendant-appellant's version of pretrial events and further concluding that trial court did not err in denying motion for new trial).

## E. Fourth claim of ineffectiveness: "Failure to allow" Delmas to testify during punishment phase

Delmas's final argument is that Neyland was ineffective because he did not allow Delmas to testify during the punishment phase of trial. She argues that she did not understand she could decline to testify at the guilt-innocence phase of trial and still testify at the punishment phase. And she relies on Neyland's testimony at the new-trial hearing that he thought she should have testified during the punishment phase.

But Neyland also testified that he explained the phases of the trial to her and that Delmas elected not to testify. Neyland testified that Delmas "seemed like she wished that she did not want to testify." He also noted that, had she testified, "it would leave her open to being asked about her prior probations and revocations,"

13

which could have been harmful. Neyland testified that he will not force a client to testify against the client's wishes. He explained, "I mean, if she says, hey, I don't want to get up there, I'm not going to make her get up there."

The trial court reasonably could have determined on this record that Neyland explained the trial proceedings to Delmas, Delmas told Neyland that she did not want to testify, and Neyland reasonably pursued a trial strategy that would not include any testimony from Delmas. *Cf. United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (evaluating effective of counsel based on counsel's explanation of advice he had given to client at time of representation, even though counsel later stated misgivings that client may not have fully understood advice or intended to accede to counsel's recommendation).

The trial court was not bound to accept Delmas's version of events stated in her affidavit and reasonably could have credited Neyland's explanation of his client advice and Delmas's choice not to testify. *See Ex parte Ali*, 368 S.W.3d 827, 840 (Tex. App.—Austin 2012, pet. ref'd) (stating that "the trial court would not have abused its discretion in disbelieving" statements in defendant-appellant's affidavit in support of allegation of ineffective assistance of counsel).

The trial court did not abuse its discretion in denying the motion for new trial on this final argument.

## Conclusion

Having considered each allegation of ineffective assistance of counsel presented by Delmas and concluded that the trial court did not abuse its discretion in denying Delmas's motion for new trial, we affirm.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

Do not publish.  TEX. R. APP. P. 47.2(b).

## Addendum

1:30 o'clock, A. M.